FILED
Clerk
District Court
SEP 30 2023
for the Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| SARDINI GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC, <br><br> Defendant. | Civil Case No. 1:20-cv-00007 <br><br> **MEMORANDUM DECISION GRANTING DEFENDANT'S MOTION FOR SANCTIONS & ORDERING DISMISSAL OF CASE** |

     Before the Court is Defendant Imperial Pacific International (CNMI), LLC's ("IPI") Motion for Sanctions Pursuant to Fed. R. Civ. P. 37(b) and 37(e) (ECF No. 91) filed during the course of a bench trial. Plaintiff Sardini Group, Inc. ("Sardini") opposed (ECF No. 94) the motion, to which IPI replied (ECF No. 99). The Court heard oral arguments on this motion as well as IPI's separate motion to strike testimony previously received via remote testimony from China (ECF No. 90; Mins., ECF No. 101). At a subsequent status conference held on February 7, 2023 (Mins., ECF No. 104), the Court, after considering the controlling law and the parties' arguments, announced its decision GRANTING IPI's motion for sanctions and dismissed Sardini's civil action pursuant to Rule 37 of the Federal Rules of Civil Procedure. The Court now issues this memorandum decision detailing its reasoning.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Discovery Issues

In October 2020, Sardini filed its First Amended Complaint ("FAC," ECF No. 10) alleging two causes of action against IPI: breach of contract or in the alternative unjust enrichment/quantum meruit for damages totaling $1,951,127.00. (FAC ¶ 51.) At the heart of Sardini's claims is the allegation that IPI breached a contract with Sardini by failing to pay for Sardini's design and engineering services on IPI's hotel-casino complex commencing sometime in 2015. (*See* FAC ¶ 24 ("On July 11, 2016 [Sardini] provided IPI with a summary of all services [Sardini] performed up to June 30, 2016, and a calculation of the amount owed for those services.").) Shanghai Chinafu Structural Design, Inc. ("Chinafu"), a non-party to this action, and IPI entered into that contract for design and engineering services on November 3, 2015. (Final Pretrial Order's ("FPO's") Uncontested Facts ¶ 2, ECF No. 68 at 3.) In the contract, there is an "additional services" provision which Sardini maintains it performed under and therefrom should receive compensation. (*Id*. ¶¶ 3-4.)

Sardini claimed that by June 30, 2016, it had accumulated $1,228,357.10 worth of services rendered for IPI's hotel-casino complex. (FAC ¶ 24.) This amount increased by over half-a-million dollars to $1,781,207.00 in October 2017. (*Id*. ¶ 31.) Then, "[o]n or about March 5, 2018, [Sardini] provided an updated and final summary of services rendered. The total calculated fee for the services provided up to March 5, 2018, was $2,051,127.00." (*Id*. ¶ 34.) Qing "Steve" Zuo is the sole owner of Sardini Group Inc., which was incorporated in New York. (FPO's Uncontested Facts ¶ 1.)

In the early stages of discovery for this case, IPI certified service of its first requests for production ("RFP") over a year before the trial was scheduled to begin. (ECF No. 91-10 (dated July 2, 2021).) Specifically, IPI requested the production of all documents and communications:

(1) "[B]etween Sardini and any subcontractors, consultants, or third parties that Sardini engaged for the purpose of providing services in response to requests by [IPI]" (*id.* at 9, RFP No. 6);

(2) "[R]egarding any payments or transfers of funds made during the relevant period by Chinafu or any of its principals to [Sardini, Zuo, or anyone] associated with or acting on behalf of [Sardini] or Steve Zuo, and the basis for any such payments" (*id.*, RFP No. 9);

(3) "[R]egarding any requested or contemplated payment or transfer of funds between [Sardini] or Steve Zuo and Chinafu, or any of its principals" (*id.*, RFP No. 10);

(4) "[R]elated to a February 23, 2016 invoice issued by Chinafu to [IPI] and the related payment by [IPI], including any communications between [Sardini], Steve Zuo and Chinafu or any of its principals or officers regarding the receipt and distribution of the funds paid" (*id.* at 10, RFP No. 11).

According to the RFP, "communications" included all "transmission[s] of information" such as correspondence, emails, recordings, typed communications, notes or memoranda beginning January 1, 2015 through July 2021. (*Id.* at 2-3, 6.) "Document" was to "be interpreted in the broadest sense possible and include[d] any reduction to tangible form[.]" (*Id.* at 3.) And all documents and communications included information in the "possession, custody, or control of any of [Sardini's] officers, agents, . . . consultants and representatives, or any Persons directly or indirectly employed or

3

retained by . . . [Sardini] or anyone else acting [on Sardini's] behalf . . . and any other Documents that [Sardini has] the legal right to obtain on demand." (*Id.* at 5.)

The fact discovery cut-off date was originally dated August 2021, a month after the RFP's were sent to Sardini. (ECF No. 12.) However, seven more scheduling orders were subsequently issued during the pendency of this action (ECF Nos. 29, 31, 34, 36, 38, 42, 45), and fact discovery was extended by seven months, through March 2022 (ECF No. 38). No discovery motions were filed by either party, and no issues regarding discovery were raised until the bench trial. IPI did, however, move to compel Sardini to itemize its claimed damages after the parties met and conferred to discuss the proposed final pretrial order that was to be submitted to the Court. Sardini's proposed language was very broad and read as follows: "Plaintiff requests damages in breach of contract in the amount of $1,901.307.00. Plaintiff requests damages for unjust enrichment in the amount of $1,901,307.00." (IPI's Mot. to Compel Itemized Statement of Damages 2, ECF No. 55.) It asserted that "IPI has a right to an itemized list of the damages claimed by [Sardini], so that it can prepare to defend against those claims by presenting evidence that it did not request and/or authorize such services to be provided." (*Id.* at 4.) This was the first instance in which IPI brought to both the Court's and Sardini's attention the need for more detailed information regarding Sardini's claim for damages.

The day after IPI's motion to compel was filed, the Court held a final pretrial conference. (Min., ECF No. 62.) At this final pretrial conference, the Court granted the parties' stipulation to bifurcate the trial between liability and damages. (*Id.*) It also ordered Sardini to submit its itemized damages thereby mooting the initial motion to compel, and the Court set a hearing date for the pending motions in limine. (*Id.*) Sardini filed its itemized damages the next day. (ECF No. 63.) IPI was not

satisfied with Sardini's itemization that were simply categories of damages and moved to compel. (ECF No. 64.)

At the motion hearing held on July 26, 2022 (ECF No. 72), the Court denied IPI's motion to compel, and adopted the enumerated damages disclosed by Sardini, which totaled $1,901,307. (ECF No. 68 at 5.) The Court ultimately found that Local Rule 16.6(b) governing pretrial orders did not require Sardini to enumerate the details IPI sought beyond the itemized damages that Sardini listed in categories, timeframes, and amounts. (*Id.*)

Nearly two years after Sardini initiated this civil action, a bench trial commenced on August 2, 2022. (Mins., ECF No. 75.) During the bench trial, testimony revealed relevant documents that Sardini did not produce including spreadsheets tracking work performed by its subcontractors, employment records such as time sheets, payment information to employees or subcontractors for work performed, and documents relating to subsidiaries and affiliates of Sardini. Although IPI moved to dismiss the case based on these deficiencies, the Court denied the motion and instead ordered Sardini to produce all additional responsive materials by August 12, 2022. (Min., ECF No. 78.)

Pursuant to Court order, Sardini produced its supplemental materials totaling 225 Bates-stamped pages. (Decl. Salyer ¶ 2, ECF No. 80-1.) However, days later, IPI sought dismissal for a second time arguing that Sardini had "fallen far short of complying with the Court's Order that it produce all responsive documents." (Mot. Dismiss or in Alternative Compel and Continue Trial 2, ECF No. 80.) In particular, IPI argued that the documents were facially incomplete, "appear to have been selectively produced," and constituted additional discovery violations by Sardini. (*Id.*)

Nevertheless, the Court once again denied IPI's motion for dismissal but granted its motion to compel and continued the bench trial. (Mins., ECF No. 82.)

Multiple status conferences were held thereafter, each time following up on various financial records that Sardini was to produce, including internal financial records and bank account records. (Mins., ECF Nos. 84, 87, 88, 89.) Each time, the Court pushed back the bench trial, and each time, Sardini apprised the Court that it encountered numerous roadblocks to gather discovery and that its efforts were ongoing. (*See id*.)

These ongoing status conferences culminated in IPI's oral motion for sanctions in the form of dismissal on December 15, 2022. (Mins., ECF No. 89.) The Court ultimately set a briefing schedule ordering IPI to file a renewed motion to dismiss pursuant to Federal Rule of Civil Procedure 37 in writing. (*Id*. at 2.) IPI filed its motion (ECF No. 91) to which Sardini opposed (ECF No. 94). IPI subsequently replied in support of its motion. (ECF No. 99.) The Court ultimately found in favor of IPI by sanctioning Sardini and dismissing its case. (Mins., ECF No. 104.)

**B. Remote China-Based Testimony**

During the four-day bench trial, several of Sardini's witnesses testified remotely from locations within China. (ECF No. 102.) At the December 2022 status conference, the Court sua sponte raised the issue of whether remote testimony of witnesses located from within China constituted a violation of Chinese law, and if so, what the appropriate remedy should be. (Mins., ECF No. 89.) The particular legal provision at issue is Article 284 of the Chinese Civil Procedure law, which states:

> Request for and to provide judicial assistance shall be made through channels prescribed by international treaties concluded or acceded to by the People's Republic of China; or in the absence of such a treaty, shall be made through diplomatic channels.

> A foreign embassy or consulate to the People's Republic of China may serve process on an investigate and collect evidence from its citizens but shall not violate the laws of the People's Republic of China and shall not take compulsory measures.
>
> Except for the circumstances in the preceding paragraph, no foreign authority or individual shall, without permission from the competent authorities of the People's Republic of China, serve process or conduct investigation and collection of evidence within the territory of the People's Republic of China.[1]

At the time the Court dismissed Sardini's case, the Court noted that had IPI's motion for sanctions been denied, the Court would have stricken the testimony from the China-based witnesses. (Mins., ECF No. 104.) Nevertheless, the Court also indicated that it would have permitted Sardini to retake testimony outside of China. (*Id*.)

## II. LEGAL STANDARD

Rule 16 of the Federal Rules of Civil Procedure authorizes a court to manage its cases "so that disposition is expedited, wasteful pretrial activities are discouraged, the quality of the trial is improved, and settlement is facilitated." *Allen v. Bayer Corp.*, 460 F.3d 1217, 1227 (9th Cir. 2006). Complying with discovery obligations is an essential pretrial activity to ensure the "just, speedy and inexpensive determination of every action and proceeding." *See* Fed. R. Civ. P. 1. Thus, a party who fails to comply with discovery orders may be sanctioned. Fed. R. Civ. P. 37(b)(2)(A). These sanctions include (1) taking matters related to a party's claims and/or defenses as established, (2) prohibiting the non-compliant party from supporting their claims or defenses, (3) striking pleadings in whole or in part,

---

[1] This translation is derived from *Sun Group U.S.A. Harmony City, Inc. v. CRRC Corp., Ltd*., No. 17-CV-02191-SK, 2019 WL 6134958, at *1 (N.D. Cal. Nov. 19, 2019), which cites it as Article 277—the identical predecessor to Article 284.

(4) staying proceedings until compliance, (5) dismissing the action in whole or in part, (6) rendering default judgment, or (7) finding contempt. Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii). Dismissal, however, is a "harsh penalty" such that courts must weigh five factors before imposing dismissal: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Henry v. Gill Indus., Inc*., 983 F.2d 943, 948 (9th Cir. 1993). The first two factors favor imposing sanctions in most cases while the fourth weighs against dismissal. *Id*. "Thus the key factors are prejudice and the availability of lesser sanctions." *Id*. at 947. Importantly, for dismissal to be proper, the conduct to be sanctioned must be due to willfulness, fault, or bad faith by the losing party, which need only be "disobedient conduct not shown to be outside the control of the litigant." *Id*. at 947-48 (citing *Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1341 (9th Cir. 1985).

**III.   DISCUSSION**

IPI seeks discovery that it believes is relevant and would bolster its defenses. Specifically, IPI argues that pending discovery would demonstrate that "(1) much or all of the services that Sardini alleges were uncompensated were actually paid for through IPI's contract with, and payments to, Chinafu, (2) Sardini did not actually provide much of the 'additional services' alleged, and (3) any 'additional services' performed did not cost what Sardini alleges." (Reply 8, ECF No. 99.) It argues that Sardini's suggestion for the Court to establish adverse inferences as an alternative to dismissal would result in dismissal anyway "since Sardini's claims will necessarily fail if it cannot prove that it provided 'additional services' for which it was not compensated." (*Id*. at 7 n.3.) Thus, IPI concludes,

Sardini's arguments are an "attempt[] to substitute its own preferred discovery standard for that defined in the Federal Rules of Civil Procedure." (*Id.* at 9.)

The Court finds that the discovery IPI seeks is not only relevant, but critical for Sardini to establish liability and for IPI to mount its defense thereto. However, due to Sardini's delayed and incomplete discovery materials, Sardini cannot reasonably expect to meet its burden of proof or allow IPI to present a meaningful defense. IPI is therefore prejudiced without such relevant discovery. Furthermore, the Court's generous extensions of discovery deadlines in the midst of trial and threats of other sanctions did not succeed in compelling Sardini to produce the relevant documents. Sardini's failure to provide these documents at the outset of the discovery process despite multiple extensions and failures to even notify IPI of the existence of these documents is solely attributable to Sardini's willful withholding. Therefore, as discussed more fully below, the Court grants IPI's motion for sanctions in the form of dismissal. The Court also articulates its findings on remote testimony by witnesses based in China.

**A. The discovery IPI seeks is relevant.**

As a threshold matter, the Court finds that the discovery documents IPI seeks are relevant. "Relevant information for discovery purposes includes any information 'reasonably calculated to lead to the discovery of admissible evidence,' and need not be admissible at trial to be discoverable." *Shaw v. Experian Info. Sols., Inc.*, 306 F.R.D. 293, 296 (S.D. Cal. 2015) (quoting Fed. R. Civ. P. 26(b)(1)). "[R]elevance encompasses 'any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be [presented] in the case.'" *Id.* (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). District courts enjoy wide discretion in deciding relevancy

for purposes of discovery. *See* Fed. R. Civ. P. 26(b)(1) (discovery limited to relevant matters); *Shaw*, 306 F.R.D. at 296. The party opposing discovery bears the burden of showing the discovery requested is irrelevant by specifically detailing the reasons why each request is irrelevant. *V5 Tech. v. Switch, Ltd.*, 334 F.R.D. 306, 310 (D. Nev. 2019).

Here, IPI submitted its request for production in July 2021. (ECF No. 91-10.) Its requests included documents and communications: (1) relating to the negotiation, execution, and performance of any agreement between Sardini and Chinafu for services to IPI (*id.* at 7-8); (2) between Sardini and subcontractors or other third parties for services to IPI (*id.* at 8-9); and (3) regarding payments or transfer of funds among Chinafu, Sardini, Zuo, and IPI (*id.* at 9-10). During the bench trial approximately a year later, testimony revealed that employees of Sardini's subcontractors and subsidiaries performed significant work, payments by Zuo were made to these employees, subcontractors and subsidiaries, and finally payments by cash or wire transfer were remitted among ChinaFu, IPI, Sardini, Zuo, and Sardini's subcontractors and subsidiaries. This occurred because according to the testimony of Mr. Fu, he had a private agreement with Zuo that was based on the direct contract between Chinafu and IPI. The additional services provision in the Chinafu-IPI contract was never clearly assigned by Chinafu to Sardini or any of Sardini's subsidiaries with IPI's knowledge and consent. This testimonial evidence reveals the relevance of IPI's discovery requests as they relate directly to establishing who can assert the claim for breach of contract—based on who performed pursuant to which contract and who made the payments for these services. Sardini does not appear to

contest the relevancy of these documents.[2] Thus, to the extent relevancy is concerned, the Court finds that IPI's discovery requests are relevant because they directly go to determine what, if any, payments were made, to whom, by whom, and when.

### B. Sardini's failures to comply with discovery significantly prejudices IPI.

IPI argues that the discovery requested, and the discovery it continues to wait for, are necessary for it to prepare and present its defenses—even as to liability. Because of the delay and/or unavailability, IPI is "unfairly limited in its ability to contest testimony offered by Sardini's witnesses[.]" (ECF No. 91 at 20.) The prejudice, moreover, is exacerbated because "the resistance and delay [that] came not only during the discovery period but continued while trial was already in progress." (*Id*. at 21.)

Sardini, by contrast, asserts that it has substantially complied, and IPI "is not prejudiced in any way, [because] it appears they can only benefit from the lack of bank records that might be used to establish damages suffered by Sardini's principal." (ECF No. 94 at 5.) IPI avers that Sardini's continued failure is unacceptable and that it

> cannot show that this failure is outside of its control, as it has failed to take basic steps—fulfilling its data preservation obligations, communicating through counsel with its accountant regarding its legal obligations, timely reviewing the documents provided by its accountant—that would have allowed it to obey the Court's orders.

---

[2] Although Sardini did not contest the relevancy of the documents requested at the various status conferences following the bench trial, it does appear Sardini previously argued that the discovery IPI seeks is beyond the scope of "documents and communications." (*See* Opp'n to Mot. to Dismiss and Mot. to Compel, ECF No. 81 (contending that discovery requests by IPI were not within the parameters of IPI's RFP's).) Although the Court denied IPI's initial motions to dismiss, the Court nevertheless granted IPI's motion to compel and ordered Sardini to produce the discovery requested by IPI. (Mins., ECF No. 82 (Aug. 18, 2022).)

(ECF No. 99 at 11.) The Court finds that IPI is prejudiced because the recently discovered records and documents are critical for IPI to mount its defense as to liability *and* damages. "Actions that impair an opposing party's ability to go to trial or interfere with the rightful decision of the case are prejudicial." *On Demand Direct Response, LLC v. McCart-Pollack*, No. 2:15–cv–01576, 2018 WL 3060524, at *5 (D. Nev. Apr. 20, 2018), *R. & R. adopted,* 2018 WL 3058866 (D. Nev. June 19, 2018) (citing *Payne v. Exxon Corp.*, 121 F.3d 503, 508 (9th Cir. 1997). To summarize, Sardini asserts that IPI breached its contract with Sardini by failing to pay for services rendered to IPI. IPI argues that Sardini did not perform all the work it claims and disputes that the work performed costs the amount Sardini alleges. Thus, to support Sardini's breach of contract claim, Sardini would have to show that (1) there was work performed by Sardini, that (2) it has not been paid. Alarmingly, however, Sardini failed to produce, prior to trial, certain relevant discovery to support its claims, despite the existence of such information. This includes a set of income statements between 2015 and 2021 (ECF No. 94-2) and a summary of assets and liabilities (ECF No. 94-3), which would establish whether and to what extent Sardini provided uncompensated services to IPI. Not only did Sardini withhold these documents until the middle of trial, Sardini claims it cannot produce any other documents to show how the figures in the income statements or assets are derived. Essentially, Sardini cannot show that it performed uncompensated work for IPI without corroborating evidence, and IPI cannot defend itself without discovery confirming or refuting IPI's liability.

Sardini argues that many of the remaining documents cannot possibly be acquired due to the non-cooperation of third parties such as Chinese banks and a seemingly rogue accountant. But Sardini is not without recourse. For example, the accountant who refuses to provide the documents Sardini

relied on to create the income and asset statements could have been subpoenaed. But Sardini not only failed to do this, Sardini *never* gave notice to IPI of the existence of these documents during the discovery phase. The Court thus agrees with IPI: Sardini failed in its discovery obligations despite having had control of these documents. Regarding Sardini's assertion of impossibility either because certain documents do not exist or cannot be acquired, it is unfathomable that Sardini would not preserve its records when it started threatening IPI in 2019 with litigation for a claim worth nearly $2 million. *See Surowiec v. Cap. Title Agency, Inc.*, 790 F. Supp. 2d 997 (D. Ariz. 2011) ("It is well established that the 'duty to preserve arises when a party knows or should know that certain evidence is relevant to pending or future litigation.'" (citation omitted)). At minimum, Sardini should have been preserving its records when it initiated this action in 2020, but it did not. Where Sardini failed to preserve its records, it precluded both IPI's and *its own ability* to reach meaningful settlement or even summary judgment.

Sardini asserts that it can establish liability for breach of contract by referring to testimony and invoices. But oral testimony in this case, without any further corroboration, to establish what services were rendered by whom and remains unpaid, does not give the opposing party a fair chance at defending itself. IPI cannot be expected to defend itself solely by cross-examination. Rather, IPI has a right to all relevant discovery for it to properly defend itself before it can be ordered to pay for the services rendered—especially when there *is* relevant and corroborating evidence. Because this is a document-driven case without the requisite documents, IPI cannot be expected to mount a full and proper defense. As for invoices, Sardini has produced but two invoices that fail to show how the total sums in those invoices are derived, and it seems Sardini will never be able to show. Just as with

testimonial evidence, Sardini cannot possibly expect IPI to defend itself by assuming the veracity of the invoice totals without further corroboration.

Additionally, at trial, the Court and IPI learned of several other entities in which Sardini used services from in relation to the IPI hotel-casino complex. One particularly noteworthy entity is an affiliate of Sardini: Beijing Sardini, which was later reorganized as Beijing Sardini Construction Consultant, Inc. In addition to Beijing Sardini, Zuo, not Sardini who is the named plaintiff, apparently paid significant sums to numerous employees and companies for their work performed on the IPI project, yet not one of these other entities or Zuo are plaintiffs in this action. Although Zuo financed these different entities, there is only one plaintiff: Sardini Group Inc. The financial statements of Sardini bear this fact out; there are no accounts receivables from these other entities.

Finally, the Court highlights the significant delay in which all these discoveries came to light. IPI's characterization of the prejudice it has suffered is apt: "This unfortunate pattern [of delayed discovery] has resulted in a more than five-month delay in trial, significant prejudice and expense to IPI and to this Court, and yet somehow the Court's orders still remain unfulfilled." (ECF No. 99 at 11.) Over two years after the initiation of this action, after multiple extensions of the fact discovery cutoff, and five months after the start of the bench trial in this case, Sardini continues to come up short in producing relevant and corroborating discovery. This not only prejudices IPI but wastes the Court's resources and time.

### C. The Court has already considered and tried lesser sanctions against Sardini.

The Ninth Circuit looks to (1) whether the district court considered lesser sanctions; (2) whether it tried lesser sanctions; and (3) "whether it warned the recalcitrant party about the possibility

of case-dispositive sanctions." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007). It is not necessary "to give any explicit warning that a case-dispositive sanction may be imposed." *On Demand*, No. 2:15–cv–01576, 2018 WL 3060524, at *6 (citing *Valley Eng'rs Inc. v. Elec. Eng'g, Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998)). "A party's repeated failure to comply with discovery requests and the Court's orders manifests the requisite fault to justify case-dispositive sanctions." *Id.* (citing *Sigliano v. Mendoza*, 642 F.2d 309, 310 (9th Cir. 1981)). "The most critical factor to be considered in case-dispositive sanctions is whether "a party's discovery violations make it impossible for a court to be confident that the parties will ever have access to the true facts.'" *Conn. Gen. Life Ins. Co.*, 482 F.3d at at 1097 (quoting *Valley Eng'rs Inc.*, 158 F.3d at 1058).

Here, the Court has repeatedly instructed Sardini to fully comply with its orders, engaged in months of status conferences, and has threatened monetary sanctions. While Sardini may not be faulted for the non-cooperation of other entities, Sardini can and is faulted for failing to preserve these records in the first place. It appears that Sardini did not engage a financial expert witness to sort all the financial documents, and it did not see the need to offer such testimony at trial because no financial expert witness was included in Sardini's witness list. It does not appear that Sardini could recover from these discovery mishaps.

### D. Acquiring testimony from witnesses based in China is permitted but requires going through the procedures of the Hague Convention.

Also before the Court are the parties' arguments on the applicability of Article 284 of the Chinese Civil Procedure law as to trial testimony taken from witnesses in China. (ECF Nos. 90, 93, 98.) IPI maintains that Article 284 strictly and plainly precludes such testimony (ECF No. 90 at 7),

and therefore the Court should strike all testimony proffered by witnesses located in China and have it re-introduced live in Saipan or outside of China. (*Id.* at 13-17.) Meanwhile, Sardini asserts that IPI fails to analyze whether the testimony may be permitted under the Federal Rules or the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Convention") pursuant to the U.S. Supreme Court's balancing test in *Societe Nationale Industrielle Aerospatiale v. District Court*, 482 U.S. 522 (1987). (ECF No. 93 at 6-17.) IPI, by contrast, avers that there is no need to resort to any balancing test or the Hague Convention because Article 284 of the Chinese Civil Procedure law expressly precludes testimonial evidence. (ECF No. 98 at 4.) Ultimately, the Court finds that Article 284 of the Chinese Civil Procedure law does not absolutely prohibit testimonial evidence, but that Sardini would have to go through the procedures of the Hague Convention for the testimonial evidence to be permissible.

    Contrary to IPI's arguments, there is no absolute bar to acquire evidence from China—even testimonial evidence. IPI appears to acknowledge that a deposition in China is prohibited unless acquired through the Hague Convention. (ECF No. 90 at 8 n.2.) However, IPI then asserts that "if taking a voluntary deposition violates Article 284's dictate that 'no foreign agency or individual' may 'collect evidence' without authorization from Chinese authorities, a party's trial testimony would unquestionably violate the law." (*Id.* at 7.) But this statement misses the mark; it is not that a party's trial testimony would "unquestionably violate the law," it is that a party's trial testimony would "unquestionably violate the law" *if the party did not get authorization from Chinese authorities*—as the Hague Convention prescribes. The language in Article 284 confirms this: "[N]o foreign authority or individual shall, *without permission from the competent authorities* of the People's Republic of

China, . . . collect [evidence] within the territory of the People's Republic of China." Article 284 prescribes that a foreign embassy or consulate may collect evidence; otherwise, permission must be granted by China. The procedure for acquiring permission is implicated by the first paragraph of Article 284 and implicitly requires resort to the Hague Convention: "Request for and to provide judicial assistance shall be made through channels *prescribed by international treaties* concluded or acceded to by the People's Republic of China . . . ."[3] (Emphasis added.) Even the Department of State's website explicitly identifies that the Hague Convention must be complied with in acquiring evidence and depositions. Based on the plain language of Article 284 and the State Department's website, the Hague Convention applies.

Although the Hague Convention's procedures apply to China as a signatory, Sardini argues that the Court need not resort to the Hague Convention based on the U.S. Supreme Court's 1987 decision in *Aerospatiale*. In that case, defendants moved for a protective order after plaintiff served requests for written discovery; under French penal law, defendants could not respond to discovery requests that did not comply with the Hague Convention. *Aerospatiale*, 482 U.S. at 526 (requests for production of documents, interrogatories, and requests for admission). Critically, however, *Aerospatiale* concerned written discovery—not testimonial evidence. Without any explicit directive

---

[3] Both the United States and the People's Republic of China are signatories to the Hague Convention. The U.S. Department of State's website identifies China as a signatory to the Hague Convention and that evidence, including depositions, must be acquired through the Hague Convention: https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/China.html.

17

otherwise, this Court will not exceed the bounds of *Aerospatiale* and determines that the Hague Convention applies to testimonial evidence.

Among its many provisions, the Hague Convention prescribes procedures for examining individuals within the executing state, which, here, would be China. Under the procedure, litigants seeking to examine an individual must specify in a letter of request "the names and addresses of the persons *examined*," and "the questions to be put to the persons to be *examined* or a statement of the subject-matter about which they are to be *examined*." Hague Convention, Art. 3, U.S.T. 2555, 2557-64 (emphasis added). Signatory states may refuse to execute a letter of request if the request "does not fall within the functions of the judiciary" or if the "sovereignty or security" of the contracting state would be prejudiced, but execution "may not be refused solely on the ground that under its internal law the State of execution claims exclusive jurisdiction over the subject-matter of the action or that its internal law would not admit a right of action on it." *Id*. at Art. 12. Nevertheless, a person in the state of execution may refuse to give evidence if that person has a privilege under the law of the state of execution. *Id*. at Art. 11. The Hague Convention plainly prescribes procedures for examining individuals, which applies to testimonial evidence. *See* Testimony, Black's Law Dictionary (11th ed. 2019) (defining testimony as "*evidence* that a competent witness under oath or affirmation gives at trial or an affidavit or deposition." (emphasis added)). There is no distinction between written and testimonial evidence and therefore the Hague Convention's procedures apply.

In summary, reading Article 284 and the Hague Convention in tandem, testimonial evidence from witnesses in China may be acquired if the proper procedures are followed, *i.e.,* the procedures in the Hague Convention.

## IV. CONCLUSION

Plaintiff Sardini has been given multiple opportunities to comply with the Court's discovery orders issued in the midst of a bench trial. For its failure to comply and based on the foregoing reasons, the Court GRANTS Defendant IPI's Motion for Sanctions pursuant to Fed. R. Civ. P. 37(b) and 37(e) (ECF No. 91). This case is hereby dismissed with prejudice.

IT IS SO ORDERED this 30th day of September 2023.

RAMONA V. MANGLONA
Chief Judge